Good morning, Your Honors. May it please the Court, Joseph Whelan for Southcoast Hospital Group. I would request two minutes of your reserve for my rebuttal time. Thank you. The issue before the Court is whether Southcoast Hospital Group's policy concerning transfers among its hospitals violated Sections 881 and 883 of the Act. Before I get into the details of our position, I would like to highlight three important things that I ask the Court to consider. The first is that there has been no finding of any union animus, and for good reason, because there was none. It was not even alleged. Well, because under threshold issues, the Board never got there. They never made any findings about animus one way or the other, because they didn't need to. Under the Great Dane framework, absence of a legitimate and substantial business justification dooms your case, doesn't it? It does not, because there was a legitimate and substantial business justification. Right, but if there was not, you don't need a finding of animus. That is correct, but they never even prosecuted the case, asserting that there was union animus. They never even brought that forward, because there was none. I think Judge Barbador is saying they didn't have to reach that, based upon the way they did proceed. I understand. They don't have to reach that, but even at the outset, they never even asserted it in the proceeding. So it wasn't as though the judge said, well, South Coast did not produce this legitimate business reason, and therefore we don't have to get to that issue. They never even submitted evidence on that. So you're saying the board was required to address only the second issue, because there was no evidence at all on animus? Yes. As opposed to the board deciding that, as between the two issues, they were going to decide the first one, because the second was wrong. That's correct. From the outset, the board took that, the general counsel took that position. The second thing I would ask you to remember from the outset is that the collective bargaining agreement, section 8.2, provides greater rights for the unionized employees at Toby Hospital than the policy in question provides to employees at the other hospitals. And the third thing, going back to what we were just discussing, is that South Coast... It provides greater rights to them at Toby. Yes. Bargain for rights. Yes. Okay. The third thing that I would ask that you consider from the outset... Why are those greater rights? Because at Toby... As compared to the policy? Yes. Okay. At Toby, all they had to do was be minimally qualified, and they got preference. At the other sites, the policy required that it was only a tiebreaker if they were equally qualified. Therefore, they would have to be better qualified. Did you argue that point to the board? Yes. And that is in the board member, Ms. Camaro's, dissent. It goes into that in detail. The third point that I want to raise from the outset is that South Coast has shown a legitimate and substantial business reason for its policy. It's called fairness to its employees. And the board now finds itself arguing against a policy of fairness toward employees. Is your duty to prove a legitimate... Is it a duty to prove a legitimate and substantial justification or a duty to come forward and assert a legitimate and substantial justification? It's the difference between the burden of proof and production. I believe it's somewhere in between. It's not the burden of production that we see, for example, in McDonnell Douglas. But it is a showing. And I think you need not look any further than the board's, than the general counsel's, brief on that issue to support my argument that we met that burden. At page 13... So it's something between a production and proof burden, you're thinking. It's a showing. It says a showing. Doesn't Fleetwood trailer sort of suggest that it's a burden of proof? I think it is more than a burden of production. So it is some level of proof. But if you look at the general counsel's brief, it says when an employer's given reason for its discriminatory conduct does not sufficiently justify that conduct, and then it says, e.g., because the reasons are not logically related to the conduct, because the conduct is not necessary to achieve the employer's stated purpose, or because the reasons are frivolous in some way, the board must reject the reasons as not meeting the legitimate and substantial standard. I submit that you can adopt that standard, and we prevail, because the reasons that were proffered by the hospital, by Dave to Jesus, more than met those standards. They are absolutely related to a legitimate business reason. But the board rejected your two justifications. One on the ground that there was not specific evidence of specific complaints, and there's no evidence in the record that anybody had specifically complained. And the second issue, the level playing field justification, they rejected on the ground that because the other two hospitals were much larger in combination,  there'd be many more opportunities to apply for positions. So your second justification simply was not true. What's your response to that? I'll take those in reverse order if I can. On the second issue, there are three reasons. First of all, and what I think you're getting to is, again, I'm going to ask you to do what I ask all my law students to do, is read the dissent, because they address those issues. I'll try to be a good law student. They address those issues very specifically and very clearly. It addresses those issues very specifically and very clearly. First, the TOBI employees are not affected by the facility policy that the board says would have been legal. It doesn't impact them either way. It only makes a difference for the St. Luke's and Charlton employees. Second, the TOBI employees do not get first-round consideration for all of the positions that come open in those 4,800 positions, right? I mean, it's a hugely different thing because there are going to be many more openings for which people can apply, and that was the board's reasoning, wasn't it? It was, and it fails, again, my second and third reasons. The second one is the union controlled that. The policy says if you are willing, if the union is willing to have mobility among, the same mobility among its hospital as other hospitals, we accept that. And the third reason is, and the board member, Mr. Merrill, lays this out, is this idea of proportionality. The impact, the negative impact for the 250 people at South Coast, where all of those 4,000 people at those other hospitals don't get the ability to get the TOBI. Here's the problem with that. I'd like your response because my law clerks and I were debating this very issue. So that makes sense if you assume that there are positions always open, but these are a whole variety of positions. You may be at TOBI, and the position you want may not come up for 20 years, but if you're looking at a 4,800-person hospital, those positions are going to come open much more often so you can get into the lottery to get those positions where you may go your entire career at TOBI and never have an opportunity to apply for a job because there are only two of them and they're filled by career employees. So this is what the majority of the board concluded. It's a real disadvantage. What's your response to that? My response to that are two issues. One, the first is there are 4,000 people who are going to be eligible to be applying for those jobs at those other hospitals. But at least they get to apply, whereas at TOBI, the position may never even come open because there are only 200 of them. Let me address the second. At TOBI, employees do get to apply, and they are treated better than external candidates, which is a more favorable standard to them than the reverse coming back towards TOBI. So I'm out of time. If I can address just one last point on the estoppel issue, and that is the board simply applied the wrong standard. They applied the standard for waiver. It is a very different standard than for equitable estoppel. Thank you. Thank you. Good morning. My name is Barbara Sheehy for the National Labor Relations Board. First, I'll sort of, I think, take in order the way that he did it and we'll see where that goes. As to the first issue about the, I think, the three judges have recognized or others have recognized, the board does not have an obligation to demonstrate anti-unanimous if the employer has failed in its justification. To suggest that the board should somehow be faulted or the general counsel should somehow be faulted because at the hearing, it shows not to introduce that evidence because it's a faulty premise. What happens is the general counsel put on his case and then the employer put on its case. At that point, the general counsel would have been free to recall witnesses if the general counsel as a litigation strategy thought that the case was compromised and then the employer came forward during the hearing with what the general counsel evaluated as calling into question whether they actually did sufficiently prove a legitimate and substantial business justification. The general counsel at that point could have raised evidence as to animus. The fact that the general counsel opted not to shows nothing other than the strength of the general counsel's case as the general counsel saw it. The point here is, is this a record in which evidence of animus was put forward and the board, simply for a logical reason, did not need to reach it? Right. Or is this a case where the general counsel, for those same reasons, did not put in evidence of animus so we don't have a record that we could refer back. If we disagreed with the board on the grounds I never lied, there would be nothing to send back to the board to determine animus because there's no evidence of animus in the record, which is it? Well, to be fair, I think if this court rejects the board's finding that there was no substantial justification, that the employer's justification is in fact logical and that there was evidence of it, and rejects the credibility findings of the administrative logic, but if we're there on remand, I don't know that I would fairly characterize the record as entirely without evidence of animus. I think you could make the argument that certainly there was no testimony as to direct animus, but if it goes back to the board to deal on remand, I think you could see the board directing the parties at that point. So brief on this record, can we raise an inference? We're going to have to say I think we all concede there's no direct evidence. So the basic point is you're not conceding that there's no animus evidence in the record, and so if we move against you on the grounds on which the board, then we should remand for the board to then decide if there is animus evidence, and if there is, whether it's persuasive or not. Sure, and you're afraid to make the argument that the record is devoid of all that. Turning to the issue that the board did rely on, the thing that puzzles me here is the tilted playing field, even the tilted playing field rationale that the employer put forward. The board quite properly noted that while the other two hospitals combined had more openings than Toby, but it then entirely neglected the denominator in that quotient, which is presumably there were also a lot more applicants because you combined the two hospitals. It was at each hospital they were open to competition from the other hospital, and so you don't know whether that quotient was more or less favorable to the Toby employees unless you know it. It's like half an analysis, and this is what the dissent pointed out, and the board literally doesn't respond to that dissent at all. It says we've been accused of doing math, not doing the math, but then it doesn't do the math. So it seems to me we have a facially putative rationale that clearly did, clearly was a tilted playing field, clearly was an adjustment, and then you have a completely insufficient, mathematically insufficient, finding that that adjustment so far oversharped the mark that we should deem it illogical rather than commission the board's rationale. I think two responses. First, we're going to go on facts first, and then we'll go to whether there was a qualitative analysis. There are two employees, at least in the record, from Toby who we know applied several times. In fact, Munez applied five times over at, I forget which of the other two facilities. And then you had Sousa apply for multiple opportunities, I think at least two, over also at the facility. So you have evidence in the record that there were employees who were trying several times, Toby employees, trying to go over there. So we know. That doesn't really respond to Judge Cayette's question, though, because his point, this is what was troubling us when we were discussing the term. Sure. If you bring the denominator into the question, it does look like a level playing field. The response that I'm trying to figure out isn't the response to that to say when you have one facility that is very large and one that is very small, it is reasonable to assume there will be many more opportunities to fill positions at the large institution. So even though your chance of getting any one is the same, if they're comparable in terms of number of employees, there will be more opportunities to apply for openings at a larger facility and you're disadvantaging the union people because of it. That was sort of my question. I like that one. I like that. Let's look at the figures. It's not just that there's a couple extra over at the other two facilities. You're talking 215 bargaining unit positions at Toby versus 4,800 at the other two facilities, plus I think they're actually closer to 5,000 when you take into account the other, the ancillary facilities. But we'll focus on the 4,800. But I think it's a reasonable leap for the board to say, a reasonable assumption for the board to make to when they're evaluating the employer's justification when they say we want to level the playing field. And the board says, okay, great. Let's see if you've leveled the playing field. And what they said instead was, no, what you've done is you have given an advantage. You have punished or discriminated against Toby employees because of the contractual benefit that they have. Now, let's remember, just as a side note, how this contractual benefit comes about, right? It's not the union forcing it down the employer's throat. This exists in the collective bargaining agreement as a benefit to Toby employees because the employer and the union reached an agreement. Well, that's another thing that I'm having trouble with. It seems to me here, if you step back notionally, what's happened is the employer has said to all three hospitals, your choice. You can be a closed shop if you want to negotiate that or you can be an open shop. And if you're an open shop, here are the rules. You've got to be open to the other and they've got to be open to you. But if you're a closed shop, then you get these, you're protected totally within your own. And the union made an option, made a decision, we'd like to have the benefits of the closed shop, which also include some little extra rights in terms of degree of qualifications. And the other employees didn't. As I understand it, it's still open to all of the Toby employees with their union to have the same procedure if they actually do think it's better. If they went through that quotient and determined it was a positive rather than a negative number, they could opt for it. But I think that's sort of Toby's analysis on the head to suggest that the union should be foregoing a contractual benefit to get on the same level as the others. No, no, no. The whole rationale is that the others is better. The whole rationale of what the board has said is that the others got something better than the union benefit. Well, that would bother me if it was foreclosed to the union. But the fact that the union doesn't opt for it really cuts against your notion that it's a better deal. Well, what the union didn't opt for in the 1997-98 negotiations was not only what you're referring to as an open shop, not only agreeing to the open shop, but on top of that, they also had to agree to remove the language that the most senior employee within Toby, or sorry, within that unit, would receive the job. So not only were they asked to open the shop to everybody else, but they were also asked to forego the language in their contract that gave first consideration to union employees, which is not an unusual contractual benefit. And to the point, though, that I was trying to get to before was that when the board was looking at the numbers and we were talking about this common denominator concept, what they were looking at was we're going to take you at face value but what you're trying to do is level the playing field. Is what you've done, is it doing that? And we said that it's not because the way you could have done it that truly would have leveled the playing field is to just give site-specific preference to each of the employees. Toby would have it site-specific for 215 jobs. Doesn't that bring you into a real problem with the board where this court said we caution the board that it is neither our function nor the board's to second-guess business decisions? Isn't this a case where what the board really did was a level playing field justification was advanced. That's clearly a legitimate and substantial justification if true, but it isn't true, it doesn't work the way the board, the hospital says it does, so we're going to second-guess the hospital's decision-making and the First Circuit and board said you're not supposed to do that. To be fair, I don't think it is second-guessing, I think it's entirely consistent with Borden, Borden 2 specifically on the wingman decision, where the employer's justification was not taken at face value. In Borden, the board and in this court in force, the board's finding that the justification was illogical, that the justification on its face was okay and it's not that they were saying that was a bad decision that you made, what the board did there and what the board's doing here is not that it was a bad decision, so leveling the playing field, the board isn't indicting that as a concept. What it's doing is saying your justification, we're going to look behind that not to second-guess whether it's a good idea, but is that what's actually happening? So even if it was pursued legitimately in good faith without any actual anti-union bias, and even though it's a legitimate substantial justification if true, the board can look behind that, and if it thinks that it doesn't work the way that the hospital contends, it can reject that. I'm sorry, if that's the way that that came across, that's not at all what I was intending. The first, I'm going to answer the second part if I may, go over a little bit more time. The first part of that is we're not going to get to motive, that's the first part of your question, we're not going to get to motive unless you can show as the employer that you had a legitimate and substantial business justification. So at that step, the board is looking at what are you qualifying, and they evaluate it in terms of, we've seen the cases where the board speaks about whether it's logical, there's another case, the International Brotherhood case, speaks to whether something is frivolous. So it's not second-guessing the business decision. The board is very clear that leveling the playing field is not in and of itself the problem here. The problem is this policy doesn't do that. So you're saying if they had a good justification what they want to do, but they were fumbled a bit in putting it into place and didn't get it just right, that the board can therefore say that's the equivalent of illogical or implausible? I don't think that a fair reading of this case, this is just that it's a small fumbling. Well, on that, here's, help me with this, you say, the board said, if they just on each hospital got its own bailiwick rather than the cross-fertilization, then that would have been okay. Then they would have evened the playing field. I think, actually, can I step in right there? Because I'm not sure that's what the board actually says. But it suggested that. It suggested it. Sure, I just don't want to go on record saying the board would have found... You just made the same suggestion here, that it would be pretty hard to criticize that as not evening the playing field. I think a fair reading of this, yes, is that's going to be an easier policy to justify. I can't see any difference at all between that and what the employer did. As far as its impact on the TOBI employees, unless you speculate that there are, from time to time, fewer internal applicants for open positions at one of the other hospitals, because if there aren't, then the two have exactly the same effect on TOBI employees. I'm not sure we agree on that. I think that when you have a vacancy at facilities B, I'm going to call them B and C, St. Luke's and Charlton, that if you have a vacancy at B and C, under the current policy, if I am an employee within there, I'm going to be in the first round of consideration. If I'm a TOBI employee, I am not in that round. If you separate it out, and then we have three distinct silos of preference... So just like B only. Within the only, right. If a vacancy comes up in hospital B, then a TOBI employee is on the same footing as a hospital C employee. Which means they don't get the preferential spot in the first tier of the hierarchy. They still don't, but they have to be competing, even if there's only one. They have to be competing against fewer employees when the preference is only given to one silo. If it's only true if there aren't enough internal B employees, isn't it, who fill up the slots? I'm not sure I understand. If there are not enough... Yes, I guess there's complete speculation. There's no evidence in this record that there are fewer internal employees for open spots than there are spots. No, but I think the board was going on the pure numbers of it, that if you look at 48 employees, 4,800 employees, and then we also have a record of people having tried to get into those positions from TOBI. You have Sousa, who was trying to become... I think he was trying to get into a higher level position, and he couldn't do it. And you have Nunes, tried five times to get over to another facility, and she couldn't do it. So I think the specific employees, now to be fair, they were coming in as the individual discriminantees, but taking that, the particular evidence that's on the record there as it relates to them, and then put up against just the bare numbers of 4,800 positions being privileged at the expense of 215. I think it's reasonable for the board to have said, you didn't in fact level this playing field. Unless there are any questions on estoppel, I'll ask for full enforcement of the board's order. Thank you. Thank you, Your Honor. If I may just address the second concern that you raised on the evidence question. There absolutely was evidence of the substantial and legitimate business reason. David DeJesus testified that he did it because he wanted fairness and equity among the employees of South Coast. He testified that there had been complaints, and he testified that he had prior experience at another employer where this problem arose. That was completely uncontroverted evidence. There was no evidence brought into it in any way to challenge that. The only thing that was asked of him was, can you name the person who complained? And because he was looking back over a period of 12 years, his answer was, no, I can't identify a specific person. So we think that there was absolutely appropriate evidence of that. And documentary evidence, I would just point the court to the case of Stone v. Webster, where documentary evidence is not necessary where the testimony is uncontroverted on a particular subject. Going back to the equitable estoppel issue, I want to raise something that was not raised in our brief, and that is the judge and the board adopted this idea that the 1997-1998 negotiations were not really that relevant because the business agent didn't remember them and, in fact, wasn't the business agent at the time. That is of no moment. The business agent is not the party to the dispute. The union is the party to the dispute. So we think that that needs to be looked at. Another fact that was not in our brief. If they're not in your brief, why are we hearing about them? It's in the record. It's in the record and in the judge's decision. But that's not how it works on appeal. You're the appealing party. If you didn't make an argument, can you prove it? No, it's all within the argument, and there are just added facts in the decision, and that is that Christine Diossi, who was a business representative for the union, had a complaint that was the prior year and that was forwarded to the business agent.